**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0544n.06

**No. 09-3272**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| | ) | **Aug 08, 2011** |
| Plaintiff-Appellee, | ) | LEONARD GREEN, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| FLAVIO G. VARONE, | ) | NORTHERN DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellant. | ) | **OPINION** |

Before: BOGGS, SUHRHEINRICH, and STRANCH, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** In 2006, Flavio Varone, an investment professional, began taking money from some of his clients' investment portfolios and using it for his personal expenses. Following an investigation by the FBI, Mr. Varone was convicted of interstate transportation of property taken by fraud and attempted tax evasion. He was sentenced to 57 months of incarceration and now appeals the substantive reasonableness of that sentence. We affirm.

**I.     Background**

**A.     Factual Background**

Mr. Varone was an investment executive, selling insurance and investing retirement and trust funds for his clients. He began as an investor with John Hancock and later moved his accounts to U.S. Allianz Securities ("Allianz"). Mr. Varone had developed relationships with a number of elderly clients, many of whom trusted him to a shocking degree with their finances. In November

2006, Allianz received a complaint from one of Mr. Varone's clients, William Cvetko, about Mr. Varone's handling of his money. An Allianz investigator began looking into Mr. Cvetko's complaint that his check to Allianz had been cashed but the funds were never deposited into one of his investment accounts. That same month Mr. Varone resigned his employment with Allianz. Allianz eventually reported Cvetko's complaint to the local police department, who referred it to the FBI in April 2007. This began an investigation into Mr. Varone's dealings with a number of other elderly clients. During the course of this investigation, the FBI interviewed a number of elderly clients who claimed they gave Mr. Varone varying sums of money but that the money was never deposited into their investment accounts with John Hancock or Allianz.

For example, Margaret Witz (Sister Annunciata) claimed that she entrusted her incapacitated sister's life savings to Mr. Varone so that he could distribute it for her medical care. Her sister's funds ran out quickly, even though her medical bills remained unpaid. She alleged that Mr. Varone forged her signature on checks drawn on her sister's bank account (over which she had power of attorney) and took that money for his personal use. FBI investigators calculated that Mr. Varone took approximately $100,000 from Ms. Witz and her sister, which he used to pay off the balance on several vehicles he purchased, to make delinquent tax payments, and to pay his girlfriend's credit card debt.

Mr. Varone filed Harriet Trojan's taxes for her every year, and she paid for his services by check. FBI investigators alleged that Mr. Varone altered the amount of one of the checks, taking a total of $47,500 from Ms. Trojan, which he used to pay off several cars and make investments for his parents.

Mr. Varone managed the financial affairs of Josephine Loparo for approximately 20 years. She gave Mr. Varone $73,000 by check, addressed to him, to invest for the benefit of her daughter, Virginia Loparo. Instead, Mr. Varone cashed the check in his personal account and used it to pay off part of his line of credit. Mr. Varone also deposited checks drawn on Virginia Loparo's account in his personal account in the amount of $54,000 and used those funds to pay off additional vehicles, pay delinquent taxes, and make medical payments for Ms. Witz's sister.

Mr. Varone convinced Ardell Slapar to open a line of credit at her bank for Mr. Varone to use for his personal finances. In exchange, he agreed to repay the money he borrowed and take Ms. Slapar to the grocery store and on other errands. That line of credit is currently in default in the amount of approximately $62,000.

B.      **Procedural Background**

At the end of trial, the jury found Mr. Varone guilty of three counts of interstate transportation of property taken by fraud in violation of 18 U.S.C. § 2314 and four counts of attempted tax evasion in violation of 26 U.S.C. § 7201. At the sentencing hearing, the district court calculated the guideline advisory range for Mr. Varone to be 57 to 71 months and sentenced Mr. Varone to 57 months' incarceration on each count to be served concurrently, followed by 3 years of supervised release. Mr. Varone filed this timely appeal arguing that the sentence imposed on him is substantively unreasonable because it fails to take into consideration certain positive factors and places unwarranted weight on negative factors that were already accounted for in his guidelines calculation.

## II. Analysis

### A. Standard of Review

We review a district court's sentencing determinations for an abuse of discretion. *United States v. Rosenbaum*, 585 F.3d 259, 266 (6th Cir. 2009) (citing *Gall v. United States*, 552 U.S. 38 (2007)). The district court commits an abuse of discretion if the sentence imposed is either procedurally or substantively unreasonable. *Id*.

### B. Substantive Reasonableness

A sentencing court commits substantive error if the sentence "is selected arbitrarily, if it is based on impermissible factors, if it fails to consider a relevant sentencing factor, or if it gives an unreasonable amount of weight to any pertinent factor." *Id.* at 267 (citing *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008)). Appellate review for substantive error is a review of the totality of the circumstances. *Gall*, 552 U.S. at 51. Importantly, in this circuit, we apply a rebuttable presumption of reasonableness to a sentence falling within the properly calculated guidelines range. *United States v. Walls*, 546 F.3d 728, 736 (6th Cir. 2008) (citing *United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008) (en banc)). "In general, we must give due deference to the district court's conclusion that the sentence imposed is warranted by the § 3553(a) factors." *Id.*

On appeal, Mr. Varone argues that the district court failed to balance the § 3553(a) factors, giving an unreasonable amount of weight to the factors supporting a severe sentence while ignoring Mr. Varone's positive attributes.

Under § 3553(a), the sentencing court must consider, *inter alia*, "the nature and circumstances of the offense and the history and characteristics of the defendant" and the need for

the sentence in terms of punishment, deterrence and public protection. 18 U.S.C. § 3553(a)(1), (2). In our view, the district court conducted a thorough analysis of the application of all the § 3553(a) factors to the facts of Mr. Varone's case, including a balancing of his relatively positive personal history and characteristics with the nature and circumstances of his crimes.

Specifically, to Mr. Varone's credit, the district court noted that he had no prior criminal history, that he had worked in the financial industry for approximately 20 years with no indication of any prior illegality or impropriety, and that he sometimes did favors and little chores for his elderly clients. The court further credited Mr. Varone for his past military service. As to the nature and circumstances of the offense, the district judge characterized Mr. Varone's crimes as "impactful" and "serious," viewing the inflow and outflow of his victims' money from his personal checking account, in light of their vulnerable states, as "appalling."

At sentencing, Mr. Varone argued that, because the vulnerability of the victims and his abuse of a position of trust were factors used to adjust upwardly his total offense level by two levels each, the court could not also consider those factors when determining whether or not to grant a variance. However, being careful not to double-count these two factors against Mr. Varone, the district court chose a sentence at the low end of the advisory range, stating: "I think putting you at the low end of the guideline range on these facts is warranted only because some of the factors that I've discussed are built into the guideline range." Thus, Mr. Varone has failed to show that the court abused its discretion in consideration of these two factors or the nature of the offense.

In addition to this balancing, a substantively reasonable sentence must be in length not "greater than necessary to achieve the sentencing goals set forth in 18 U.S.C. § 3553(a)." *United*

*States v. Tristan-Madrigal*, 601 F.3d 629, 632-33 (6th Cir. 2010). The district court considered the necessity of the sentence in light of the goals of the guidelines in determining Mr. Varone's sentence. "I think this sentence would say to you and to anyone else that, if you thought about it, reflected on it, that knowing what I know now, if I were going to get this kind of sentence, I wouldn't do that. I think it protects the public from further crimes by you, and there were a number of people who were victims here. And I think it meets really the objectives of the sentencing guidelines and the statute . . . ." Thus, the district court did not fail to consider the necessity of the sentence and the goals of the guidelines.

## III.   Conclusion

Because the district court's analysis of all the record facts under the § 3553(a) framework was thorough and balanced, the sentence imposed was not substantively unreasonable. We **AFFIRM** the district court's sentencing decision.